May it please the court, my name is Kevin Vainio. I'm the attorney representing in this case the estate of Warren Bodecker who is also the debtor and he's been substituted as a party this matter Mr. Bodecker's personal representative who's Ryan. I had the privilege of knowing Mr. Mr. Bodecker. He was a rather unique individual. He distinguished himself at a very early age as a war hero that been recognized and he had some very definite strong feelings about things. One thing that happened in his later age is that he became very insecure and took to hiding some assets in a bankruptcy case that brings us to where we are today. I want to you know assure you that I'm in no way trying to excuse Mr. Bodecker's behavior in in hiding those assets however it is what it is and that's why we're here today. I would like to reserve about two minutes rebuttal time in this case. Basically what we're here today about is on my the bankruptcy court judge in this case. Judge Kersher was of course the judge who knew Mr. Bodecker best. Knew the facts and circumstances. Knew that Mr. Bodecker throughout this case except for initially when he signed this waiver of a homestead always asserted thereafter his right to that homestead. That's fine but then he signed the waiver you know he asserts his rights and then he signs the waiver. He gets something in exchange. Why isn't a deal a deal? He actually didn't get anything in exchange is the problem your honor. Wasn't he concerned about criminal charges being brought against him? There's some question about that. His attorney brought up about the question of charges and according to what Judge Kersher said the charges that his equitable surcharge the threat of equitable surcharge. Let me ask you about that and on this very question of what did he get out of the deal. He signed this stipulation waiving his right to the homestead exemption and waiving his right to a discharge. Correct. Now if he was waiving the right to the homestead exemption that meant that the homestead exemption then wasn't going to be in play so that we couldn't have the surcharge on the homestead exemption because of the administrative expenses. I got that. Now because he's not being discharged are those administrative expenses going to be charged against him in some other way? Is he going to be liable for those administrative expenses? If there's assets of the case. Now there was in addition that this this property that was hidden. There was gold and silver that was buried out in the yard. Well but he's not getting but he's sort of withdrawing from the bankruptcy. He's not even getting a discharge right? He's not going to get a discharge. He's not going to have his gold and silver. He's not going to have his home. Well what I'm so what I'm asking is I don't think he's getting anything because if he doesn't sign the waiver that is to say if he doesn't waive his homestead exemption the homestead exemption will be subject to these surcharges. That's the law as it then stood. So he's going to lose money on that. Well now he's not in bankruptcy at all. He's waived his right to his discharge so it sounds as though the homestead is now vulnerable to the discharge so to the to the surcharge. So I don't see what he gets one way or the other. I do see that if he out of that well this is a long question long lead-up to the question if I've described the sort of on-the-ground reality of what he got and didn't get correctly I don't see how the Supreme Court's decision in law versus Siegel makes any difference whatsoever because he's going to be liable for these administrative expenses one way or the other whether there's whether there's surcharges of the homestead exemption or whether they're discharged against him anyway. Well maybe I'm not understanding something. He's not going to be responsible for the administrative expenses of course if there's nothing to nothing to pay those expenses. Well but he's got a house right? He's got a house that he claimed an exemption on. So the house can't be used under 522 K to pay administrative expenses because he's claimed a homestead on that. So he essentially got nothing. He gave up, he turned over the gold and silver, he gave up his house, he gave up his discharge. Days after... So why did he sign it? What's that? Why did he sign? He signed it because he was insecure, he didn't really understand the significance of what he was doing. He was in the throes of having just lost his wife. He signed that and then within days, within hours, he was asking to, I don't want to do this, I don't want to I don't want to rescind this. Now Mr. Baldwin's going to go up there and say hey the appeals process had already run its course and he he didn't appeal it. Fact is that Mr. Baldwin never had an attorney. But he did have an attorney when he did sign it. What's that? He did have an attorney when he signed it. That's correct your honor. And he's a guy who's advised by counsel, right? Lawyer was involved. It's not like Bodega went and signed it behind his lawyer's back. Correct. Soon after that though, within days of that, he tried to appear at a hearing to try to get out of the... He probably will have bias or seller's remorse all the time. You know how many cases we get where people sign plea agreements in criminal cases and then say whoops I changed my mind I don't want to you know well I want to go to trial after all. One significant fact of this is that this proceeding was still going on even though he had signed this pending at the time that Judge Kershaw ruled on this. There were also motions pending to hold him in contempt for not moving out of his house. There was a motion pending to hire a real estate person to sell the house. So this is still an ongoing process that was still going on. Why does that make a difference? That's what stipulations are. Stipulations work like that. You know you have ongoing proceedings and people stipulate the things. And the process goes on now with the stipulation in place. Otherwise, if you could go back and undo stipulations because they're ongoing proceedings, you would never have stipulations. And stipulations are very useful things in litigation. That's very true, Your Honor. They are very useful. I understand why you raise the fact that this is ongoing. What possible relevance does that have? I don't think that Mr. Enkling that he had to do anything once that was submitted and the court looked at that, that he had to appeal that if he didn't agree with it. He signed it. He immediately saw that it wasn't what he wanted to do. He gave up essentially everything. There's actually no consideration for it. There was no promise that criminal charges would be, you know, they would forego criminal charges. You have about a minute. Do you want to save that for a little? I do. Thank you. May it please the Court. Robert Baldwin on behalf of the trustee Christie Brandon. I would like to address a question came up about what did Mr. Bodecker get out of this. Can I get you to turn to Supplemental Excerpt of Supplemental Excerpt. Mr. Bodecker e-mailing his attorney saying it makes good sense to sell the home. I want to move on and make other arrangements. This will give me cash and a place to live. The next page, that's SCR 187. That's volume. Appellees. This is the one that's titled trustee Appellee Supplemental Excerpt. Yes. Yes. And this should be volume two. SCR 187 is that e-mail. I'm sorry. Okay. 188 and 189 are his handwritten notes from his meeting with his counsel. And 190 and 191 are his handwritten numbers that cross reference to the next page that are his questions about this stipulation. He met with his very experienced and competent bankruptcy counsel. If you look at 194, counsel e-mails about the stipulation saying he wants to have all this behind him in exchange for waiving the discharge. And 196 is Mr. Bodecker at the very bottom saying I am going to sell my real estate and move away. Let me tell you what he got out of this deal. And if he didn't actually get it, it's his own fault. He had silver and gold buried in five gallon buckets that he lied about on his schedules and under oath in his 341 exam. When that was found out, he had enough money in the equity in his house to pay all his debtors. He could have gotten those buckets of gold and silver back and gone on with his life. And that was the plan. That did not happen, however. That's why he stipulated. That's what these e-mails are saying. He would have cash and he could get on with his life. He could have the gold and silver back. But then after he stipulated, he got buyer's remorse. He changed his mind and he obstructed the sale of the real estate. Ms. Brandon got death threats from these patriot groups with which he was by then the prices had plummeted and the sale of that wasn't adequate so she had to turn back to the house to fulfill her duties. So what Mr. Bodecker got out of this deal, if he had abided by it, was cash and getting on with his life. He would have gotten his gold and silver back. He elected to waive the homestead to effectuate that plan. Then he and he alone screwed it up. Now, this case is not really a bankruptcy case. There was no order of surcharge here. It never happened. There was no motion. There was no adversary proceeding seeking a surcharge. Mr. Morgan, competent bankruptcy counsel, did tell Mr. Bodecker, you might get surcharged. You might get criminally charged. About the surcharge, he told him about the circuit split, the Tenth Circuit disagreed with Latin and V. Burdett, and told him you can challenge it. Mr. Bodecker decided not to dissipate his gold and silver. Instead, settle on these terms, waive the homestead so the house could be sold to pay his creditors. He would get the surplus back, those buckets of gold and silver, and he'd go to Utah and live with his daughter. That's all on the record. That is undisputed. This case is not about a surcharge. It's not about Law v. Siegel. It's not about Section 522. This is a contract case. He contracted. He stipulated, I'll give up this, you'll give up that, and that's how we will progress with this litigation. You know, Judge Kirchner is a very experienced, capable bankruptcy judge. Yes, he is. He disagrees with you. Are you saying that he was just kind of sympathetic to Mr. Bodecker and his situation? What's going on here? I would be guessing. If you want me to guess, I will. Yeah, please. I think he was. I think he felt sorry. Let me express my extreme respect for Judge Kirchner. I agree with everything he just said, and I double it. I think he had sympathy for Mr. Bodecker. He took a turn in that opinion that nobody had asked him to take. The original objection or motion to rescind that Mr. Bodecker filed argued contract, coercion, duress, consent wasn't free, and lack of due process. We won on that. Judge Kirchner said, you're right about all that. He rejected every one of Bodecker's arguments, and then out of left field came this ruling that he was going to reexamine the continued viability of the law of the case doctrine. That had not been argued or suggested. We had no chance to weigh in on that. Yes, I think Judge Kirchner, who is a very humane and compassionate man, did exactly what you suggested. Now, was Mr. Bodecker alive at the time of Judge Kirchner's decision? Do you know? He was. Yeah. He was. Unfortunately, he's no longer with us, and I don't mean to take anything away from Mr. Bodecker. He is a World War II veteran. Frankly, I liked him, but it's not cool to lie about assets in a bankruptcy. In any event, this is a contract case. Contract, and the initial attack was based upon contract principles. Of course, state law supplies the rule of decision, even in the bankruptcy courts, about contracts, and you have decided that in prior cases. Montana has the case on marriage of grace. What about Judge Fletcher's question earlier? Does the Supreme Court case make any difference at all? Law v. Siegel? It does not, and I can explain why. It does not because of this. I think that was what Judge Fletcher was suggesting. It sounded right to me. I was just wondering whether you agree with that. There are two different issues or questions in play. One of them is not actually in play, although Mr. Bodecker's counsel or appellant's counsel would like it to be in play. One issue is can the court surcharge an exemption? The other issue is can a debtor waive an exemption voluntarily and on an informed basis? Law v. Siegel decided that first issue, said bankruptcy court cannot surcharge an exemption for reasons not stated in the code. You know, my question, I might have asked it inartfully, but my basic question is, okay, I understand that in certain circumstances under the law of the Ninth Circuit as it then existed, the homestead exemption could be surcharged to pay for certain administrative expenses. Yes. Okay, that was the law. Let's assume that we're going through bankruptcy without a homestead exemption. Are the same administrative expenses assessed against the estate? Yes. Yes. So, in other words, he's liable for those administrative expenses as surcharges as against the homestead exemption, or he's liable for them without. So my question is, now that we can't do surcharges against the estate, I don't see how that helps him. If I may, Your Honor, although I think you may be mistaken or misunderstanding in my favor, but I still feel like you need to correct it. He is not personally liable for those expenses. The property of the estate is. Right. And if it's exempted, then by definition it's not in that bucket of assets that can be used to pay for those administrative expenses. So I think it does make a difference to him in theory. But Law v. Siegel said it's up to the debtor. The discretion rests in the debtor. The debtor may claim exemptions. He doesn't have to. But if he does, the court can't take him away for reasons not stated in the code. Well, the debtor has the discretion to claim them or not to claim that is to claim them or to waive them. Not claiming them is a decision that rests with the debtor. This debtor decided not to claim. At first he did. Then he waived it. Why? So that the house would be used to satisfy his debts and that gold and silver could come back to him and he could take it, move to Utah and live out his days with his daughter. That's what the evidence is. This is not a Section 522 case. 522 concerns a preference statute. It prohibits a waiver of an exemption in favor of the holder of an unsecured claim, a creditor holding an unsecured claim. Now, the trustee is not a creditor. The creditor is defined in the code and the trustee is not a creditor. Section 522E does not apply here. Besides that, Your Honors, it was not argued in the district court. The 522 argument did not appear until after the district court ruled in the trustee's favor and Mr. Bodecker filed a petition for rehearing raising it. And it was denied the next day without us responding. So that argument is waived and it lacks merit to boot. I would be happy to answer any further questions. But the fact is that under Leroy Development, that's this Court's decision, and Grace, the Montana Supreme Court's decision, if a litigant settles a case guessing or surmising or drawing a conclusion about what his odds are for prevailing on a disputed issue, and then later he finds out he guessed wrong, he could have gotten a better deal if he had litigated. In Leroy Development it was a change. It was the Nolan case, the takings case. And in Grace it had to do with the marital estate, not including the pension. If you guessed wrong and settled, you still settled. And the fact that your guess proved improvident is not a reason to get away from it. Finally, I will say that in Nolan the decision was premised on this holding. That because he consented to these mitigation efforts, it was therefore not a takings. Well, because Mr. Bodecker consented to the waiver of the homestead, it was not a surcharge. This is not a Law v. Siegel case. This is a contract case, and Mr. Bodecker contracted. Thank you. Thank you. Judge Kersher did recognize the fact that in the law the exemptions are very valued, that in fact we should protect those exemptions, and that's in fact what Law v. Siegel said. The way that Judge Kersher did, he said, well, we're going to reevaluate whether or not we're going to apply the law of the case to these further motions that were pending before the Court at that time. Law of the case has exceptions to it. One of the decisions is clearly erroneous, and enforcement would cause manifesting. What does law of the case have to do with this? Because Judge Kersher decided that his prior determination that Mr. Bodecker had hidden assets and that he was going to approve the stipulation was based upon that ruling. Judge Kersher then said that I'm not going to revisit that. You hid assets. So that was the law of the case. Siegel changed all that. It doesn't undo the stipulation. The law of the case doesn't undo the stipulation. It may justify Judge Kersher going back and reconsidering his ruling. That's fine. But it doesn't do away with the stipulation. It has no effect on that. Well, it does in this respect. The stipulation was later renounced, and it be rescinded. He, in fact, days afterwards put in another homestead. Judge Kersher is faced at that point in time with a situation, well, do I deny his request to list the homestead? If he did, he runs in the face of a violation of law versus Siegel that says that he can't do that. If the debtor claims an asset as exempt, he's got to honor that. That's what law versus Siegel said. And even though he had waived it one time, he was then reinstating that, that he wanted that. And I think that he is allowed to do that under law versus Siegel, under Rule 1009, which allows you to amend your schedules up until the closure of the case. Under the Michaels case, that basically says the same thing, that a debtor has the right until the closure of the case to amend his schedules. I have no idea what you're talking about. What does any of this have to do with undoing a stipulation? Something you've agreed with the other party, you know, you can amend the schedule. Yes, of course you can amend the schedule. What does that have to do with undoing the stipulation? He filed another exemption. He may have done that. That's perfectly fine. So what does that have to do with the stipulation? He then rescinded it. If he's given up that right, he can file another exemption, but he's validly given it up and it's binding, it doesn't do him any good. You have to undo the stipulation in order to have any of that stuff make any difference. And Siegel says the discretion rests with the debtor, not with anyone else involved with the case, and he already expressed his discretion, as Judge Kaczynski says, in the stipulation. He also said that he didn't understand the stipulation and immediately went to file another exemption. And Judge Kershaw's faced with the situation, do I deny that exemption? There was no basis for denying that exemption. You have to look to the code itself. Section 522 does not allow you to disallow an exemption just because you had previously said that you were going to waive it. You have to look to the specific provider. I think you're talking about a different universe than we live in. Thank you. All right. I appreciate it. Thank you. Thank you.
judges: Kozinski, W. Fletcher, Tunheim